**No. 23-55088**

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

YAAKOV MARKEL

Plaintiff-Appellant

v.

UNION OF ORTHODOX JEWISH
CONGREGATIONS OF AMERICA, a Corporation;
NACHUM RABINOWITZ

Defendants-Appellees.

On Appeal from the United States District Court
For the Central District of California
No. 2:19-cv-10704-JHW-sk
Hon. John W. Holcomb

---

## APPELLANT'S REPLY BRIEF

---

Steven R. Friedman State Bar No. 100748
Michael E. Friedman State Bar No. 291694*
FRIEDMAN² LLP
1880 Century Park East, Suite 1411
Los Angeles, CA 90067
Telephone: (310) 273-2505
Email: LegalSolutionsEmail@gmail.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    APPELLEES' BRIEF ANALYZES AN INAPPLICABLE ARGUMENT

     AND SETS UP A STRAWMAN TO KNOCK DOWN, RATHER THAN

     ADDRESS APPELLANT'S PRIMARY POINT, WHICH IS THAT EVEN

     IF THE MINISTERIAL EXCEPTION APPLIED TO APPELLEES, IT

     CANNOT BE APPLIED TO THIS CASE BECAUSE OU AND

     RABINOWITZ FAILED TO EVER CLAIM, ARGUE, OR ADDUCE

     EVIDENCE TO SHOW THAT THEIR FAILURE TO PAY MARKEL

     AROSE OUT OF A RELIGIOUS DECISION, DOCTRINE OR

     RELIGIOUS ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


II.   OU DOES NOT REFUTE THAT THE OU AGREED TO PAY MARKEL

     OVERTIME, AND IN FACT PAID MARKEL OVERTIME FOR THE

     EXACT SAME WORK WHICH SERVES AS THE BASIS FOR HIS

     UNPAID WAGES CLAIM.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.     JUSTICE SOTOMAYOR AND JUSTICE GINSBERG'S DISSENT IN

         *MORRISEY-BERRU* IS INSTRUCTIVE IN GUIDING WHERE AND

         WHETHER THE MINISTERIAL EXCEPTION SHOULD BE

         EXPANDED BEYOND THE FINDINGS AND FACTS OF *HOSSANA-*

         *TABOR.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


IV.      THE DISTRICT COURT AND APPELLEES' RELIANCE UPON

         *HEADLEY V. SCIENTOLOGY* IS INCORRECT. . . . . . . . . . . . . . . . . . . . . 18


V.       THERE HAS BEEN NO WAIVER AS TO DEFENDANT AND

         APPELLEE RABINOWITZ. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


VI.      THIS COURT'S RECENT RULING IN *HUNTSMAN V. CORP. OF THE*

         *PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY*

         *SAINTS*, SUPPORTS APPELLANT'S POSITION THAT MARKEL'S

         FRAUD CLAIMS SHOULD NOT HAVE BEEN SUMMARILY

         ADJUDICATED AND THAT ALL OF MARKEL'S CLAIMS CAN BE

         SUBMITTED TO THE JURY BECAUSE THEY WILL BE EVALUATED

         BASED UPON "SECULAR EVIDENCE AND ANALYSIS". . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## CASES

*Alcazar v. Corporation of the Catholic Archbishop of Seattle* (9th Cir. 2010) 627 F.3d 1288 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 19, 20

*United States v. Ballard,* 322 U.S. 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bob Jones University v. United States,* 461 U.S. 574 . . . . . . . . . . . . . . . . . . . . . . 16

*Bollard v. California Province of the Society of Jesus,* 196 F.3d 940 . . . . 7, 8, 9, 12

*Bowen v. Roy,* 476 U.S. 693 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cantwell v. Connecticut,* 310 U.S. 296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Elvig v. Calvin Presbyterian Church,* 375 F.3d 951 . . . . . 7, 8, 9, 10, 12, 19, 24, 25

*Employment Division., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 87216

*Gen. Council on Fin. and Admin. of the United Methodist Church v. Superior Ct. of Cal., Cnty. of San Diego,* 439 U.S. 1355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Headley v. Church of Scientology International,* 687 F.3d 1173 . . . . . . . . 18, 19, 20

*Our Lady of Guadalupe School v. Morrissey-Berru* (2020)

      140 S.Ct. 2049 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 16, 17, 18

*United States v. Lee,* 455 U.S. 252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Prince v. Massachusetts,* 321 U.S. 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Rasheed,* 663 F.2d 843 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Schleicher v. Salvation Army,* 518 F.3d 472 . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7

iv

*Shaliehsabou v. Hebrew Home of Greater Washington, Inc.,* 363 F.3d 299 . . 4, 6, 7

*Tony and Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290 . . . . . . . 17

*United States ex rel. Kelly v. Serco, Inc.,* 846 F.3d 325 . . . . . . . . . . . . . . . . . . . . . 21

# INTRODUCTION

Appellees' Answering Brief still fail to make the key evidentiary and legal showing necessary for the Ministerial Exception to be applied to Markel's case. Appellees failed to show any link between their failure to pay Markel and any religious decision, doctrine, or rule. Indeed, Appellees never even made a claim that their failure to pay Markel related in any way to religion. Appellees' failure to make such a claim before the Trial Court or adduce any such evidence means that the Ministerial Exception cannot and should not be applied to the instant case, particularly at the summary judgment phase.

Instead, as briefed in the Opening Brief, Appellees' testimony and evidence (along with Markel's testimony) was that they agreed to pay for overtime hours worked and that the reason they did not pay Markel for the hours claimed in this suit is they are unsure of whether those hours were worked.

Markel's evidence disputes that he would qualify as a minister or that the OU would qualify as a religious institution, **but even if those two contentions by Appellees were undisputed, the Ministerial Exception would not bar Markel's claims**.

As the District Court recognized at oral argument, this matter is a case of first impression. There is no precedent which would permit the expansion of the

Ministerial Exception to exempt religious institutions from ALL regulation by the State or Federal Government. This Court's decision in *Alcazar v. Corporation of the Catholic Archbishop of Seattle* (9th Cir. 2010) 627 F.3d 1288 does not countenance such an expansion. Similarly, the dissent of Justices Sotomayor and Ginsberg in *Our Lady of Guadalupe School v. Morrissey-Berru* (2020) 140 S.Ct. 2049 are instructive on the why the Ministerial Exception should not be extended beyond its current incarnation.

Appellees' brief does not dispute or refute the evidence which shows that Appellees agreed to pay Markel overtime for the work done and that they did pay such overtime on many other occasions for the same work. Appellees do not even attempt to link their refusal to pay Markel now to any religious issue or decision because no nexus exists and therefore the Ministerial Exception does not apply.

Appellees also largely ignore the issue that most, if not all, of the material facts underlying their Motion for Summary Judgment were disputed by Markel's admissible evidence and, absent a trial, it was error for the District Court to summarily adjudicate all of Appellant's claims.

Finally, Appellees incorrectly argue that any error as to Appellee Rabinowitz was waived for failure to brief in the Opening Brief. Such an argument is legally incorrect and ignores both the headers and substance of the Opening Brief which

directly mention Rabinowitz and discuss the District Court's error in granting summary judgment as to fraud and all causes of action against Rabinowitz.

This Honorable Court should reject the attempts to expand the Ministerial Exception beyond its permissibly application and should reverse the entirety of the dismissal so that Markel can present his claims to the trier of fact.

## I.  APPELLEES' BRIEF ANALYZES AN INAPPLICABLE ARGUMENT AND SETS UP A STRAWMAN TO KNOCK DOWN, RATHER THAN ADDRESS APPELLANT'S PRIMARY POINT, WHICH IS THAT EVEN IF THE MINISTERIAL EXCEPTION APPLIED TO APPELLEES, IT CANNOT BE APPLIED TO THIS CASE BECAUSE OU AND RABINOWITZ FAILED TO EVER CLAIM, ARGUE, OR ADDUCE EVIDENCE TO SHOW THAT THEIR FAILURE TO PAY MARKEL AROSE OUT OF A RELIGIOUS DECISION, DOCTRINE OR RELIGIOUS ISSUE.

Appellees waited until page 49 of their brief to even begin discussion of the novel issued raised by this appeal: whether the ministerial exception applies when the religious institution fails to ever state, claim, allege, testify, or otherwise state that their failure to pay a person doing work for them is keyed to a religious

decision, doctrine, or issue.

Each and every case cited by Appellees, including *Alcazar I* and *Alcazar II; Schleicher v. Salvation Army*, 518 F.3d 472, 474, 477-78 (7th Cir. 2008); and *Shaliehsabou v. Hebrew Home of Greater Washington, Inc*., 363 F.3d 299, 310 (4th Cir. 2004) share a single common thread, **namely that the defendant in each case claimed that they were being sued for a religious *decision* they made**.   In each fact pattern, the religious institution was able to link a religious decision or doctrine to the facts which were the underpinnings of the plaintiff's complaint.  As briefed extensively in the Opening Brief, *Alcazar* involved a claim by a seminarian being trained as part of a seminary program that the hours he worked should be paid and not considered part of his religious training.  The defendant in *Alcazar* then made the claim and adduced evidence that the time for which Alcazar was seeking to be paid was part of Alcazar's religious training.  Because the claim was keyed to whether or not Alcazar's work constituted religious training, the claim was barred by the Ministerial Exception.

Similarly in *Schleicher v. Salvation Army* the core issue which implicated the Ministerial Exception was that the plaintiff's work at the thrift shop was:

" not to wait on customers of the thrift shops or manage one or more

of the stores on a day to day basis; it is to manage a religious complex

4

that includes thrift shops. **The rehabilitation centers are self-contained religious communities for their residents, whom the Salvation Army is trying to save.** The centers include a chapel as well as living and dining areas, and the residents pursue courses of religious studies and devotions along with undergoing work therapy as employees of the thrift shops. The Schleichers admitted at the evidentiary hearing that their duties as administrators of the Indiana center had included "preaching," "leading worship singing," "overseeing or leading daily devotions," "overseeing or teaching Bible studies" to the residents, "overseeing or conducting Christian living classes" for them, and teaching "soldiers classes," which are classes for prospective Salvation Army ministers. **In addition, the ministers circulate throughout the thrift shops "getting to know [the employees—the flock], getting to fellowship with them, but most importantly to minister to them, to talk to them about the condition of their soul**."

*Schleicher v. Salvation Army*, 518 F.3d 472, 477 (7th Cir. 2008) (bold added).

*Schleicher* involved ministers working at a self-contained religious community which also had shops. The ministers were there to "save the souls" of the

5

inhabitants of the religious center, and therefore, like in *Alcazar*, whether or not some of that time might be compensable invaded the religious decisions of the institution.

But *Schleicher* also recognized that there would be many scenarios, including a church gift shop, where the Ministerial Exception would not apply. Moreover, *Schleicher*, in discussing *Shaliehsabou* held that an evidentiary hearing would be the proper means to dispose of such a claim, *not summary judgment*:

"The best way to decide a case such as this, and one consistent with the evidentiary hearing that the district judge conducted, is to adopt a presumption that clerical personnel are not covered by the Fair Labor Standards Act. The presumption (which is consistent even with the fierce dissent from the denial of rehearing en banc in the Shaliehsabou case, see 369 F.3d at 803 (4th Cir.2004)) can be rebutted by proof that the church is a fake, the "minister" a title arbitrarily applied to employees of the church even when they are solely engaged in commercial activities, or, less flagrantly, the minister's function entirely rather than incidentally commercial. Suppose a church received by inheritance a steel plant, and it happened to have among its ministers a former steel executive whom it assigned to manage the plant full time. The example is artificial given the exemption of administrative employees from the FLSA mysteriously not invoked

6

in this case. But setting the exemption to one side, it would be a case of a bona fide minister who had, however, stepped entirely out of his religious role to manage a commercial enterprise full time."

*Schleicher v. Salvation Army*, 518 F.3d 472, 477–78 (7th Cir. 2008)

Markel did adduce such evidence, including that the "minister" title was fake and arbitrarily applied but the Court, in violation of the prohibition against weighing evidence on summary judgment, disregarded such evidence.

The analysis in *Schleicher* rejects Appellees' argument that the Ministerial Exception is an absolute bar to all of Markel's claims.

*Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 308 (4th Cir. 2004) also recognized a variety of areas where the Ministerial Exception would not apply.

Appellees are incorrect in their assertion that the Ministerial Exception is an absolute bar to Markel's claims for fraud, and failure to pay Markel for time worked *which the OU agreed was compensable*.

Appellees also improperly rely upon *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940 (9th Cir. 1999) and *Elvig v. Calvin Presbyterian Church,* 375 F.3d 951 (9th Cir. 2004). Despite the fact that in *Bollard* the Plaintiff resigned and claimed "constructive discharge" *Bollard* expressly allowed the

claims of a victim of sexual harassment to proceed to trial because:

> "Bollard seeks damages **as his sole remedy**. He seeks neither
> reinstatement nor any other equitable relief that might require
> continuing court surveillance. Nor, beyond filing his initial claim,
> awaiting receipt of the standard right-to-sue letter, and filing his
> complaint in district court, has Bollard involved any government
> entity. **Given the limited and retrospective nature of the damages
> remedy Bollard seeks, it is clear that none of these entities will be
> involved in future or ongoing monitoring of church activities**."

*Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 950 (9th Cir.
1999) (bold added).  Here, Markel seeks damages, merely to be paid for the time
he worked based upon Markel's agreement with Appellees that they would pay
him (including overtime) for the time he worked.

Similarly, while *Elvig* held that "a damage award based on lost or reduced
pay Elvig may have suffered from those employment decisions would necessarily
trench on the Church's protected ministerial decisions" the same paragraph
expressly permitted damages claims against the Church for "emotional distress and
reputational harm caused by the sexual harassment itself—or by retaliatory
harassment—because such harassment implicates only Pastor Ackles' alleged

decision to harass Elvig and the Church's decision not to remedy that harassment,

decisions the ministerial exception does not protect. **Accordingly, because any**

**damages awarded to Elvig based on emotional distress or reputational harm**

**attributable to harassment would be "limited and retrospective," she may on**

**remand attempt to prove that she suffered such damages**. See *Bollard*, 196

F.3d at 950."

*Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 966–67 (9th Cir. 2004) (bold

added).

      Both *Elvig* and *Bollard* make clear that the Ministerial Exception is not an

absolute bar to liability even if the defendant is a religious entity and the plaintiff a

minister.

      The discussion of the Ministerial Exception in *Elvig* further supports

Markel's position that Appellees are not exempted from minimum wage laws:

> "The First Amendment does not exempt religious
>
> institutions from all statutes that regulate employment.
>
> For **example, the First Amendment does not exempt**
>
> **religious institutions from laws that regulate the**
>
> **minimum wage** or the use of child labor, even though

both involve employment relationships."

*Elvig v. Calvin Presbyterian Church*, 397 F.3d 790, 792 (9th Cir. 2005)

(concurrence) (bold added).

    Here, the OU has not made a single argument or claim that their decisions regarding how much or whether to pay Markel are at all related to any religious decision, religious doctrine or their system for hiring, firing, training, or disciplining ministers. Indeed, Markel was paid for *some* of his overtime hours and Appellees make no religious distinction between "independent contractors" or "employees" and utilize both to do the same exact jobs Markel did.

    Instead, Appellees have taken the opposite approach and their defense to the case is that they dispute **whether Markel actually worked the hours he claims and what the rate should be for those additional hours if they were worked.** (5-ER-821; 6-ER-962). Appellees did not, and do not in their briefing, link the failure to pay to anything religious or doctrinal. The only issues for the trier of fact are (1) whether Markel worked the hours he claims or whether the OU is correct and Markel did not show up to the factory during those hours; (2) whether Appellees must pay the overtime and doubletime rates mandated by California law; and (3) whether Markel was paid for the hours he worked.

    Appellees' entire *factual* defense to Markel's claims has been to state, argue

10

and testify that they disagree with the *number* of hours Markel claims he works. They do not dispute that they agreed to pay him for overtime hours, and indeed did pay Markel for some of his overtime hours. At no point have the Appellees testified or argued or adduced any evidence that their current refusal to pay Markel is keyed in some way to religion or their religious institution's ministerial or religious acts.

This case is unlike any of the cases relied upon by Appellees. Appellees have distinguished themselves factually by agreeing that they *do* pay overtime to people like Markel, and even to Markel for the exact work which Markel is asking to be paid for in his suit.

Appellees have also failed to create any indirect or direct link between their refusal to pay Markel and any religious issue or decision *of any kind*. Instead, Appellees' evidence shows that they would have paid Markel overtime if they thought he worked the hours claimed, but they don't believe he worked those hours.

Indeed, the OU doesn't even have a policy against paying overtime or paying overtime rates to people like Markel. As demonstrated in an email between Markel's hiring manager and Markel, the OU expressly stated that it *would* and *does* pay Markel for overtime. (See 4-ER-652 stating email from OU Employee

11

Elon Winkler to Markel stating pay would be: "$25 PER HOUR **$37.50**

**OVERTIME PAY AFTER 8 HOURS**" and Markel's acceptance on the same

page).

Looking at Markel's claims as the Courts did in *Bollard* and *Elvig*, the

claims are not barred by the Ministerial Exception because the relief sought is

purely damages for the time worked by Markel and the Court and trier of fact will

not be required to analyze or examine any religious decision in order to award

Markel all of the relief sought.

Appellees have been unable to identify any sort of category of religious

issue or religious decision which would be at issue if Markel's case were sent to

trial. Instead, Appellees argue that the Ministerial Exception should be expanded

so as to exempt all religious institutions from all laws governing the wages of their

employees or independent contractors. Appellees further argue that the Ministerial

Exception would bar all claims to enforce agreements and representations made by

the religious institution. But no case has so held, and Markel's facts should not be

the basis to extend the Ministerial Exception into uncharted territory.

As briefed in the AOB, the Ministerial Exception was created to prevent

*excessive* government entanglement in religious governance and to provide

religious institutions with the autonomy to chart the future course of their religions

free from governmental involvement. But the Ministerial Exception does not and should not bar Markel from being able to collect payment for the hours he worked for the OU *when the OU already agreed such hours were compensable if worked* and when the OU agreed, in writing, to pay Markel overtime.

## II. OU DOES NOT REFUTE THAT THE OU AGREED TO PAY MARKEL OVERTIME, AND IN FACT PAID MARKEL OVERTIME FOR THE EXACT SAME WORK WHICH SERVES AS THE BASIS FOR HIS UNPAID WAGES CLAIM.

Markel demonstrated in his AOB that the OU agreed in writing to pay him overtime for the time he worked (2-ER-128) and that nationwide and within California, the OU had and has a practice of paying both employees and contractors overtime for any overtime work performed. (2-ER-119-124).

At the OU's deposition, OU's representative Defendant Rabinowitz testified that the OU does pay overtime to employees and independent contractors:

"Q Okay. Does the OU ever pay overtime for kosher supervisors?

A. [by Rabinowitz]: Okay. Okay. The OU occasionally does pay overtime. It depends on the context.

Q And on those occasions when it does pay overtime, what's the policy?

When does overtime start?

A: That depends on the terms of the -- of the agreement with that either employee or that contractor. . .

Q.  Within California, does the OU ever pay overtime?

A. By agreement, where there is such an agreement in place, then the OU sometimes does pay overtime, correct."

(2-ER-117-119 [Defense Counsel's objections omitted]).

Rabinowitz then went on to testify that Markel would be paid additional amounts for working beyond 12 hours or if something unexpected arose.  (2-ER-120:2-122:2).

The evidence shows that the OU agreed to pay Markel overtime and did pay Markel overtime *for the exact type of work which underlies Markel's damages claim.*   Appellees do not contradict this fact in their Brief and do not identify any evidence in the record to undermine Appellees' own testimony on this issue. Therefore the Ministerial Exception should not be applied to bar Markel's claims because the OU has already agreed to make such payments when Markel does the work, and the only question for the trier of fact would be whether Markel performed the work.

Appellees also fail to provide any evidence or argue that the payment of

overtime to Markel somehow relates to the OU's religious governance such that government regulation would interfere with religious governance of the OU.

Moreover, even if Appellees made such an argument, it must be rejected by this Court. Because the OU admits that it does pay overtime to Markel and others for the type of work at issue in Markel's complaint, the OU cannot now raise an argument that being required to pay overtime or honor its agreement with Markel would somehow violate the OU's religious freedoms.

Stated simply, the OU is already paying overtime in California to kosher supervisors like Markel and to Markel for the work which forms the basis for the instant complaint. There is therefore nothing in the Ministerial Exception which would prevent the trial court from determining at trial whether or not Markel worked the hours he claims and whether he should be paid for those house.

## III.  JUSTICE SOTOMAYOR AND JUSTICE GINSBERG'S DISSENT IN *MORRISEY-BERRU* IS INSTRUCTIVE IN GUIDING WHERE AND WHETHER THE MINISTERIAL EXCEPTION SHOULD BE EXPANDED BEYOND THE FINDINGS AND FACTS OF *HOSSANA-TABOR.*

As discussed in the Opening Brief, the Supreme Court's decision in *Our Lady of Guadalupe School v. Morrissey-Berru* (2020) 140 S.Ct. 2049 limited its

application of the Ministerial Exception to limiting governmental regulations which would limit a church's independent authority regarding selecting, supervising, and firing ministers. *Morrissey-Berru* (2020) 140 S.Ct. 2049, 2060–2061.

Nowhere in *Morrissey-Berru* does the Supreme Court even contemplate the expansion of the Ministerial Exception which Appellees now request.

In addition to the language of the opinion, which undermines Appellees' expansionist argument, **the language of the dissent** of Justices Sotomayor and Ginsberg in *Morrissey-Berru* is instructional on why the Ministerial Exception should not be expanded:

"Our pluralistic society requires religious entities to abide by generally applicable laws. E.g., *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 879–882, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Consistent with the First Amendment (and over sincerely held religious objections), the Government may compel religious institutions to pay Social Security taxes for their employees, *United States v. Lee*, 455 U.S. 252, 256–261, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), deny nonprofit status to entities that discriminate because of race, *Bob Jones Univ. v. United States*, 461 U.S. 574,

16

603–605, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), require applicants

for certain public benefits to register with Social Security numbers,

*Bowen v. Roy*, 476 U.S. 693, 699–701, 106 S.Ct. 2147, 90 L.Ed.2d

735 (1986), **enforce child-labor protections, *Prince v.***

***Massachusetts*, 321 U.S. 158, 166–170, 64 S.Ct. 438, 88 L.Ed. 645**

**(1944), and impose minimum-wage laws, *Tony and Susan Alamo***

***Foundation v. Secretary of Labor*, 471 U.S. 290, 303–306, 105 S.Ct.**

**1953, 85 L.Ed.2d 278 (1985).**

**Congress, however, has crafted exceptions to protect religious**

**autonomy**. . . .

The "ministerial exception," by contrast, is a judge-made doctrine.

This Court first recognized it eight years ago in Hosanna-Tabor,

concluding that the First Amendment categorically bars certain

antidiscrimination suits by religious leaders against their religious

employers. 565 U.S. at 188–190, 132 S.Ct. 694."

*Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2049, 2072 (U.S.,

2020) *Dissent authored by Justice Sotomayor* (bold added).

This discussion of the origins of the Ministerial Exception reinforce the idea

that even actual religious entities employing actual ministers are not, and have

17

never been, completely exempted from government regulation, including wage and hour and minimum wage laws.

The dissent then went on to discuss the potential for abuse and the fact that even when the Ministerial Exception applies, "generally applicable laws still protected most employees" *Id.* At 2072–73 (U.S., 2020) *Dissent of Justice Sotomayor.*

Appellees argument for an expansion of the Ministerial Exception should be rejected.


## IV. THE DISTRICT COURT AND APPELLEES' RELIANCE UPON *HEADLEY V. SCIENTOLOGY* IS INCORRECT.

The District Court cited and relied upon *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1174 (9th Cir. 2012) and the underlying District Court Case of *Headley v. Church of Scientology Int'l*, No. CV 09-3986 DSF(MANX), 2010 WL 3157064, at *5 (C.D. Cal. Aug. 5, 2010), aff'd, 687 F.3d 1173 (9th Cir. 2012).

But *Headley* applied the ministerial exception in an entirely different context. In *Headley* "two former ministers claims that the Church of Scientology forced them to provide labor in violation of the Trafficking Victims Protection Act." *Headley* at 1174 (9th Cir. 2012) and sought damages from the Church of

Scientology. **Scientology defended the action by claiming that all of the alleged wrongs were religiously motivated actions**:

> "the defendants maintain that the vast majority of the conduct on which the Headleys' claims rest—stringent lifestyle constraints, assignment to manual labor, strict discipline, the requirement to leave the ministry only by routing out, efforts to retain ministers, and the practice of declaring some departed members "suppressive persons"**—is religiously motivated or otherwise protected**. But because the Headleys have not established a genuine issue of material fact regarding whether the defendants obtained their labor "by means of" improper conduct, **we need not reach the question of whether the ministerial exception would bar a claim under the Act**."

*Headley* at 1181 (bold added).

*Headley* also cited *Alcazar* and *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 966 (9th Cir. 2004) for the principle that *some* conduct by a church may is governed by the ministerial exception.

*Headley*, to the extent it addressed the ministerial exception, was in line with *Alcazar* in that the defendant and religious organization claimed that the *conduct which gave rise to the complaint was religiously motivated conduct*. Meaning in

19

*Headley* the defendant claimed that the "lifestyle constraints [and] manual labor" required by the church were part and parcel of the religious observance required by the church and the religious decisions made by the church to govern their members, and as a result the Court barred the claims by the plaintiffs. The Court applied the same reasoning as *Alcazar* that in order for the Court to adjudicate the claims of the plaintiffs the Court would need to evaluate and pass judgment upon the religious legitimacy of Scientology's beliefs and decisions.

But in the instant case, and unlike *Alcazar and Headley*, Appellees OU and Rabinowitz made no such claims that their failure to pay Markel for time worked was "religiously motivated" or keyed to some religious decision by the Appellees. Instead, Appellees simply argued that Markel was paid for all time worked. This dispute is therefore one of material facts to be decided at trial. Because Appellees here did not invoke religion or present any claims or arguments that the complained of conduct of not paying Markel the correct amount was somehow religiously motivated or based upon a religious decision, the Ministerial Exception cannot bar Appellant's claims.

## V.  THERE HAS BEEN NO WAIVER AS TO DEFENDANT AND APPELLEE RABINOWITZ.

Appellees conclude their brief with a one sentence conclusion that Markel waived any appeal as to Defendant and Appellee Rabinowitz.  The statement is incorrect and is unsupported by any legal or factual analysis.  Appellees cite, without discussion, *United States ex rel. Kelly v. Serco, Inc*., 846 F.3d 325, 336 (9th Cir. 2017) which holds that "arguments not raised by a party in its opening brief are deemed waived."   But the Opening Brief discusses Rabinowitz extensively in arguing that the *causes of action* against both OU and Rabinowitz should not have been summarily adjudicated.

Rabinowitz is an agent and employee of OU and Rabinowitz testified as PMQ for the OU (2-ER-89-90).  Summary Judgment was granted as to Rabinowitz and OU on the exact same basis, that if the OU's conduct is not actionable based upon the Ministerial Exception, then Markel could not sue the OU's employee. Indeed, the *only* legal basis noticed in Appellees' motion for summary judgment was the Ministerial Exception (6-ER-955–59; 1-ER-4–30). No separate basis was noticed for Rabinowitz.

Rabinowitz and his conduct and the claims brought by Markel against Rabinowitz are mentioned, briefed and discussed throughout Appellant's Opening

21

Brief. See AOB e.g. pp. 16, 19, 29, 31, 35, 46, 50, 69 (each time mentioning Appellees [plural] or Rabinowitz by name).

Appellant did not waive any appeal as to Rabinowitz, and indeed Rabinowitz is mentioned explicitly throughout, including in a section VII of the AOB which mentions "The District Court incorrectly concluded that the Fraud claims against both Appellees are were barred by the Ministerial Exception" (AOB pp. 69-70).

Therefore, Appellees' argument of waiver is without any merit. It is Appellees who failed to brief that issue.

## VI. THIS COURT'S RECENT RULING IN *HUNTSMAN V. CORP. OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS*, SUPPORTS APPELLANT'S POSITION THAT MARKEL'S FRAUD CLAIMS SHOULD NOT HAVE BEEN SUMMARILY ADJUDICATED AND THAT ALL OF MARKEL'S CLAIMS CAN BE SUBMITTED TO THE JURY BECAUSE THEY WILL BE EVALUATED BASED UPON "SECULAR EVIDENCE AND ANALYSIS"

Recently, in August 2023 this Court addressed the issue of the ecclesiastical abstention doctrine which also arose out of the Court's goal of "avoiding court entanglement 'in essentially religious controversies' or the state intervening on

behalf of a particular religious doctrine." *Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 76 F.4th 962, 968 (9th Cir. 2023).

This Court analyzed a series of claims related to alleged fraud upon the public by a religious institution and the Court's analysis in that issue share some commonalities with the Ministerial Exception.

In evaluating the ecclesiastical abstention doctrine, the Court made clear that while the Court cannot and will not entangle itself in religious decisions, fraud, including fraud upon the public, is not something which is protected by the cloak of religion:

> "But these 'considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud ... [is] alleged.' Gen. *Council on Fin. & Admin. of the United Methodist Church v. Superior Ct. of Cal., Cnty. of San Diego*, 439 U.S. 1355, 1373, 99 S.Ct. 35, 58 L.Ed.2d 63 (1978) (Rehnquist, J., in chambers). **That is because 'under the cloak of religion, persons may [not], with impunity, commit frauds upon the public.**' Id. (quoting Cantwell v. Connecticut, 310 U.S. 296, 306, 60 S.Ct. 900, 84 L.Ed. 1213 (1940))."

*Huntsman* at 968 (bold added)

23

This Court then articulated a clear and bright line test for when a the Free Exercise Clause is implicated in a plaintiff's claim such that the religious institution defendant would be exempted from liability:

> "The Free Exercise Clause is violated if "the truth or verity of respondents' religious doctrines or beliefs [is submitted] to the jury." *United States v. Ballard,* 322 U.S. 78, 86, 64 S.Ct. 882, 88 L.Ed. 1148 (1944); see also *United States v. Rasheed*, 663 F.2d 843, 847 (9th Cir. 1981). **In the case before us, we are not required to rely on or interpret the Church's religious teachings to determine if it misrepresented \*969 how it was using tithing funds. Nor are we required to examine Huntsman's religious beliefs about the appropriate use of church money.**
>
> **Instead, as presented to us, the questions are secular. . . A court or jury can answer these questions based on secular evidence and analysis**. See *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 963 (9th Cir. 2004); Puri, 844 F.3d at 1167 ("The dispute, which 'concern[s] the [d]efendants' actions, not their beliefs,' turns entirely on 'what the [defendants] did, ... and the texts guiding [their] actions can be subjected to secular legal analysis.' ") (alterations in original)

24

(emphasis removed) (quoting Elvig, 375 F.3d at 963, 968).

*Huntsman* at 969 (9th Cir. 2023) (bold added).

Such an analysis is germane to the instant proceeding since the Ministerial

Exception is an outgrowth of the Free Exercise and Establishment Clauses of the

First Amendment. Moreover, this Court's analysis in *Huntsman* directly cited to

*Elvig* (a Ministerial Exception case) to support the holding that secular questions,

which can be addressed by secular evidence and secular analysis do *not* implicate

the First Amendment's Free Exercise and Establishment clauses.

Moreover, the Court found that religious entities are not immunized from

any fraud they engage in merely because they hide "under the cloak of religion."

All of Markel's claims exclusively involve secular evidence and analysis and

the District Court committed reversible error in granting summary judgment.

## CONCLUSION

The Ministerial Exception was never intended to confer complete immunity

upon religious institutions from government regulation or from their own

agreements and fraudulent conduct.

All of Markel's claims can be resolved through the analysis of secular

evidence (whether or not Markel worked the hours he claims) and through the application of secular analysis (whether or not the OU agreed to pay Markel overtime and the rates set by California law for overtime). The entire trial and resolution of all of Markel's claims will not implicate a single religious issue, doctrine or decision, and will not require *any* government entanglement or regulation of religion. Moreover, Appellees have failed to argue that their decision not to pay Markel was somehow based upon or related to a religious governance decision and Appellees lack even a shred of evidence which would link Markel's claims to any religious issue or decision.

Moreover, none of Markel's actions or claims relate to the hiring, firing, training, disciplining or controlling of a minister by a religious organization.

Markel disputes that the OU is a religious organization or that Markel would qualify as a minister, but even if both of those disputed facts were undisputed, the Ministerial Exception would not touch these claims.

For the foregoing reasons Appellant requests the judgment of the District Court be reversed in its entirety and the matter remanded for trial with findings that the Ministerial Exception does not apply to the instant claims because they can be adjudicated without adjudicating any religious issue.

Additionally, summary judgment was improperly granted because the facts

upon which the District Court based its decision are disputed and the Court was prohibited from weighing those facts or rejecting Markel's facts in favor of Appellees' facts.

The District Court's judgment and dismissal should be reversed in full as to all Appellees.

DATED: January 31, 2024     FRIEDMAN² LLP

            *s/ Michael E. Friedman*
           Steven R. Friedman
           Michael E. Friedman
           Attorneys for Plaintiff-Appellant
           Yaakov Markel

28

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 23-55088

The undersigned attorney or self-represented party states the following:

⦿ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/Michael E Friedman | **Date** | January 31, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**        *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55088

I am the attorney or self-represented party.

**This brief contains** | 5,308 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Michael E Friedman | **Date** | January 31, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/22*